(54 App. Div. 168.)

CRETEAU v. FOOTE & THORNE GLASS CO. et al.

(Supreme Court, Appellate Division, First Department.   October 19, 1900.)

1. CORPORATIONS—ASSIGNMENT FOR BENEFIT OF CREDITORS—VALIDITY—PREF-
ERENCES.
   A payment to creditors made by the officers of a corporation, in viola-
   tion of Stock Corporation Law, § 48, prohibiting any conveyance of any
   property by any corporation or any officer when the corporation is insol-
   vent, with the intent to prefer any particular creditor over other cred-
   itors, does not invalidate an assignment for benefit of creditors without
   preferences, subsequently made by the corporation, where such payments
   were made to discharge the company's existing obligations.

2. SAME—RIGHT OF CREDITORS—SETTING ASIDE ASSIGNMENT.
   A judgment creditor cannot maintain an action to set aside an assign-
   ment made by a corporation for the benefit of its creditors to obtain
   a preference in the payment of his debt over other creditors, since such
   an action is violative of the stock corporation law, the policy of which is
   to prevent one creditor from obtaining any preference as against other
   creditors.

3. SAME—STOCK CORPORATION LAW—CONSTRUCTION.
   Stock Corporation Law, § 48, requiring every person receiving any cor-
   porate property by any conveyance, when the company is insolvent, to
   account to creditors, does not justify a particular creditor suing to appro-
   priate such payments to the discharge of his individual debt in preference
   to other creditors, as such provision is for all creditors, and is to be en-
   forced for all.

4. SAME—RIGHTS OF ASSIGNEE—RECOVERY OF PROPERTY FRAUDULENTLY CON-
VEYED.
   Where a corporation has made an assignment for the benefit of its cred-
   itors, the right to enforce all claims of the corporation or its creditors
   vests in the assignee, and he alone must sue to recover from those to
   whom corporate property has been illegally conveyed.

Appeal from special term, New York county.

Action by Frederick A. Creteau against the Foote & Thorne Glass
Company and others.   From a judgment for plaintiff entered on deci-
sion at special term, defendants appeal.   Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN,
O'BRIEN, and INGRAHAM, JJ.

J. K. Long, for appellants.
Herbert Noble, for respondent.

INGRAHAM, J.   The plaintiff in this action seeks to have set
aside an assignment made by the Foote & Thorne Glass Company,
a domestic corporation, for the benefit of creditors.   The complaint
alleges the recovery by the plaintiff of a judgment against the cor-
poration; that an execution was issued therein, and returned unsatis-
fied; and that, at the time the execution was issued, the corporation
would have had within the county of New York sufficient property to
pay and satisfy said execution, except for the wrongful and fraudulent
acts interposed by it to prevent such or any payment or satisfaction
of said judgment.   The wrongful acts alleged were the appropriation
of various sums of money by the president and vice president of the
company, and the payment of $1,000 each to the other defendants,
who were relatives of the president and vice president.   The court

found that on the 10th of December, 1897, a resolution of the directors was passed declaring that the corporation was unable to meet its debts and obligations, and that the said corporation was at that date, and at all subsequent times, insolvent; that at a meeting of the creditors of the corporation held on the 21st of December, 1897, at which the defendants Hislop and Colby, president and vice president of the corporation, were represented by counsel, it was stated that, if an extension of time was granted to the corporation, they would secure additional capital with which to carry on the business of the company, and that payment of all moneys due from the company to them would be deferred until such time as the creditors of said company who consented to said extension should be paid in full; that the said representations were relied upon and believed by a large number of the creditors of said company, including the plaintiff's assignor, and that in consideration thereof the said creditors accepted in payment of the moneys due them notes of said company indorsed by the defendants Hislop and Colby; that between the 8th of January, 1898, and the 18th of March, 1898, the corporation paid to the defendant Hislop various sums of money, aggregating $3,296.62, and to the defendant Colby various sums of money, aggregating $1,978.91, and that the said payments were made in violation of the said agreement; that the said company also paid to the defendant Elizabeth Hislop $1,000, and to the defendant Mary J. Colby $1,000, and that all of said payments were made at a time when the said corporation was insolvent, when it refused and was unable to pay its notes and other obligations when due, and were made with intent to hinder, delay, and defraud the just creditors, including this plaintiff; that on the 18th day of March, 1898, said corporation executed an instrument in writing purporting to be a general assignment of all its property to the defendant Clarkson for the benefit of its creditors; that the said assignment was made by the corporation with intent to hinder, delay, and defraud certain of its creditors, including the plaintiff, and that the said payments made by the said corporation to the defendants Thomas W. Hislop and Mary J. Colby constituted a collusive and fraudulent scheme or plan to so delay, defeat, and defraud the just creditors of the said corporation, including the plaintiff; that the action was not brought under the provisions of the Code of Civil Procedure relating to judgment creditors' actions, but under "the established rules of equity"; and judgment was entered declaring the assignment void, requiring the assignee to account for and deliver to a receiver therein appointed all property and proceeds of property and money received by him as assignee, and adjudging that the assignee account before a referee appointed by the judgment; that the defendants to whom the various sums of money had been paid repay the same to a receiver, and that the receiver pay the plaintiff's judgments in full, and hold the balance of the property coming in his hands subject to the further order of the court.

It appeared from the evidence, and was not contradicted, that the corporation was indebted to the various persons named the sums that were paid to them; that, as to the defendants Elizabeth Hislop and Mary J. Colby, such indebtedness arose from loans made

to the company after the meeting of the creditors before referred to. The assignment was without preference, and the assignee was required to distribute the property of the corporation coming into his hands among the creditors of the corporation equally. We will assume that the payments made to the various creditors of this corporation were void under section 48 of the stock corporation law. The question is then presented whether a payment made by the officers of a corporation, in violation of this statute, invalidates an assignment without preferences subsequently made by the corporation for the benefit of its creditors. By this action the plaintiff attempts to obtain a preference in the payment of its debt over that of the other creditors of the corporation. By section 48 of the stock corporation law, a corporation and its officers are expressly prohibited from suffering a judgment to be obtained against it, or from giving a lien or security with intent to give such a preference, and the whole policy of the law relating to insolvent corporations is to prevent one creditor from obtaining any preference as against the other creditors. To sustain this judgment would thus violate this provision of law relating to domestic corporations. It has been settled that this statute does not prevent a general assignment for the benefit of creditors by a corporation without preferences (O'Brien v. Bridge Co., 161 N. Y. 549, 56 N. E. 74); and it cannot be said that such a general assignment, without preferences, made by a corporation, is void because the officers of the corporation, prior to the assignment, have made payments in violation of the provision of the stock corporation law, to which attention has been called, but for which law the payments would have been valid. They were made to discharge existing obligations of the assignor, and there was nothing fraudulent in the corporation paying its debts. There is no allegation or finding that the corporation itself authorized these payments. To justify a court in setting aside a general assignment on the ground that it was fraudulent and void as against creditors, there must be proof that the intent with which the instrument was executed by the assignor was fraudulent. Where the corporation is an assignor, such fraudulent intent cannot be predicated solely upon unauthorized and illegal acts of its officers, where the act is not for its benefit, or in the transaction of its business, or under authority from the corporation, and where the act complained of is a direct violation of the duty of the officers and prohibited by law. Here the corporation did no act which would indicate an intent to hinder, delay, and defraud creditors, and there was nothing to show that the official act of the corporation in making an assignment had any relation to the unlawful appropriation by the officers of the corporate property. The Code expressly provides that the article in relation to judgment creditors' actions shall not apply to a case where a judgment debtor is a corporation created by or under the laws of this state (section 1879); and it would be, I think, a violation of the spirit of the law, if not its express provision, to allow a judgment creditors' action to be maintained so as to appropriate all the property of the corporation to pay the indebtedness of one particular creditor, and thus create the very preference that the statute expressly prohibits. The provision of section 48

of the stock corporation law, requiring every person receiving any property of the corporation by means of any act there prohibited to account therefor to its creditors or stockholders or other trustees, does not justify a particular creditor in commencing an action by which he can appropriate such payments to the discharge of his individual debt in preference to the other creditors. The evident intent of this statute was for the benefit of all the creditors, and to be enforced by or on behalf of all. It is analogous to the liability of stockholders in moneyed corporations imposed by section 52, c. 689, Laws 1892, where it is provided that the stockholders of every banking corporation shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation to the extent of the amount of their stock therein; and it was held by the court of appeals that the object of this statute was undoubtedly to furnish additional security to creditors, and it is for the benefit of them all, and should be enforced by or on behalf of all. Hirshfield v. Fitzgerald, 157 N. Y. 179, 51 N. E. 997. A distinction must be made between an action of this kind, which is a judgment creditors' action, and an action brought by a judgment creditor in aid of an execution then outstanding, to remove some obstacle to its enforcement. Such an action can be maintained where an execution is outstanding against a corporation, and where the corporation, by assignments or transfers of its property, has placed an obstacle in the way of the creditor enforcing the execution, and is not governed by the provisions of the Code relating to judgment creditors' actions. Such an action was Bank v. Works, 48 Hun, 558. There the plaintiff sought to set aside a prior judgment against the judgment debtor which had been fraudulently obtained in aid of an execution upon its judgment, and it was impliedly held in that case that such an action could be maintained. Home Bank v. J. B. Brewster & Co., 15 App. Div. 338, 44 N. Y. Supp. 54, was also an action in aid of an execution to set aside transfers made by the corporation. Koechl v. Brewing Co., 26 App. Div. 573, 50 N. Y. Supp. 568, was an appeal from an order refusing to grant a temporary injunction to restrain an assignee from paying out the moneys in his hands until the trial of the action. The complaint alleged there that the corporation had entered into a conspiracy with others to defraud the plaintiff, one of the overt acts the result thereof being a general assignment, and that the assignee had sold the property received under the general assignment, and had the proceeds in his hands. The court held that the action could be maintained, and the assignee should be restrained from paying out the money until the trial of the action; and the injunction seems to have been allowed as the protection of the plaintiff required it, and as only sufficient of the funds in the hands of the assignee was to be retained to meet the contingencies of the suit, which could be speedily tried, and little hardship would be worked upon any one. In so far as the relief to which the plaintiff would be entitled in such an action was discussed, the language used by the court in each case is to be construed as having reference solely to a case where the judgment creditor had obtained a lien, or a right to a lien, which, but for the alleged wrongful acts, he could enforce. Mun-

son v. Brass Works, 37 App. Div. 204, 56 N. Y. Supp. 139, was an action brought to set aside certain mortgages on the judgment debtor's property, and the object of the action was to reach the proceeds of the property which had been sold under these mortgages in the hands of the mortgagees, and the case does not apply to a general assignment made for the benefit of creditors. But this question seems to have been determined by this court in the case of Lodi Chemical Co. v. National Lead Co., 41 App. Div. 535, 58 N. Y. Supp. 717. That action was brought by the plaintiff as a creditor of the Charles H. Pleasants Company, to set aside certain transactions in judicial proceedings which resulted in the National Lead Company's obtaining a preference over all other creditors of the Charles H. Pleasants Company, and placing the assets of that company beyond the reach of such creditors, including the plaintiff. The action was based upon a violation of section 48 of the stock corporation law, and by the judgment entered in the action the acts and transactions, which resulted in the defendant, the National Lead Company, acquiring a preference, were declared to be invalid, and all the instrumentalities by which that preference was effected were adjudged void. In that judgment was inserted a provision that the receiver therein appointed should apply the property, goods, and chattels of the Charles Pleasants Company that should come into his hands, first, to the payment to the plaintiff of the amount of a certain judgment obtained by the plaintiff against the Charles H. Pleasants Company, and the defendant company appealed only from so much of the judgment as was contained in that direction to pay. In reversing that judgment, the court expressly held that, the Pleasants Company being a domestic corporation, the plaintiff could not procure a judgment for the preferential payment of its debts under the provisions of the Code of Civil Procedure; that the action being founded directly upon the permission of the forty-eighth section of the stock corporation law, and as the object to be accomplished by that statute is to secure equality among creditors, that purpose should be effectuated, and not destroyed; and the judgment was modified by striking out the provision directing the receiver to pay the plaintiff's judgment. And although the learned counsel for the respondent in this case seems to think that the court in deciding that case, in its construction of the stock corporation law, had "fallen into an error," it was the deliberate judgment of the court as to the construction to be given to section 48 of the stock corporation law and the relief to which a creditor seeking to enforce its provisions was entitled. In that case, as there was no general assignment under which the property of the corporation had been transferred to an assignee for the benefit of all the creditors, and who was in a position to enforce the provisions of the stock corporation law, and secure to the creditors the amount that had been illegally transferred by the corporation and its officers, a receiver was necessary. In this case, the corporation having made a general assignment for the benefit of creditors, the right to enforce all claims of the corporation or its creditors had vested in the assignee by virtue of the assignment, and it was his duty to recover from those to whom property of the corporation had

been illegally conveyed. The fraud, if any, was a fraud, not in the assignment, but upon the assignment, and this did not tend to avoid the assignment itself. It is quite possible that a creditor would have a right to maintain an action to enforce the liability created by section 48 of the stock corporation law in case the assignee should refuse or neglect to properly enforce it. In such a case, the recovery would inure to the benefit of all the creditors of the corporation. If the assignee does not properly perform this duty, a creditor would have the right to take proceedings to have him removed, and a new assignee appointed. But it is not intended to intimate that such a remedy would be exclusive, and in a case where there was a conspiracy to cheat and defraud the creditors of the corporation, and the assignee was a party to the fraud, equity would protect the rights of the creditors of the corporation; but in that event the relief granted would not inure to the benefit of any one creditor, but would be for the benefit of all.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.